IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 12-cv-02449-MSK-BNB

PETER GRAHAM SMITH,

Plaintiff,

v.

LARIMER COUNTY PROBATION DEPARTMENT,

Defendant.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

This matter arises on the **Renewed Motion to Dismiss Plaintiff's Complaint** [Doc. #38, filed 08/14/2013] (the "Motion") filed by defendant Larimer County Probation Department (the "Probation Department").  I respectfully RECOMMEND that the Motion be GRANTED.

## I.  STANDARD OF REVIEW

In ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court must accept the plaintiff's well-pleaded allegations as true and must construe all reasonable inferences in favor of the plaintiff.  City of Los Angeles v. Preferred Communications, Inc., 476 U.S. 488, 493 (1986); Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976).  The complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief.  Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007).  "The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984).

The standard of review for a motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is described as follows:

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction take two forms. First, a facial attack on the complaint's allegations as to subject matter jurisdiction questions the sufficiency of the complaint. In reviewing a facial attack on the complaint, a district court must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction depends. When reviewing a factual attack on subject matter jurisdiction, a district court may not presume the truthfulness of the complaint's factual allegations. A court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1). In such instances, a court's reference to evidence outside the pleadings does not convert the motion to a Rule 56 motion.
>
> However, a court is required to convert a Rule 12(b)(1) motion to dismiss into a Rule 12(b)(6) motion or a Rule 56 summary judgment motion when resolution of the jurisdictional question is intertwined with the merits of the case. The jurisdictional question is intertwined with the merits of the case if subject matter jurisdiction is dependent on the same statute which provides the substantive claim in the case.

Holt v. United States, 46 F.3d 1000, 1003 (10th Cir. 1995) (citations omitted).

## II.  BACKGROUND

The plaintiff filed his Complaint on September 14, 2012 [Doc. #1].  The Complaint contains the following allegations:

1.   The plaintiff is a 71 year old man who is partially deaf.  He is not presently able to understand or communicate through American Sign Language.  *Complaint*, ¶¶ 8, 21.

2

2.   In 1994, the plaintiff pled guilty in Larimer County District Court to three counts of sexual assault on a child by a person in a position of trust.  He was sentenced to 27 years in the Department of Corrections.  In 1998, his sentence was modified to 14 years, followed by a 15 year sentence to Sex Offender Intensive Supervised Probation run by the Larimer County Probation Department.  The plaintiff began serving the probationary portion of his sentence in December 2005.  Id. at ¶ 22.

3.   A core component of the plaintiff's probationary sentence is the requirement that he participate in group and individual therapy through a treatment provider licensed by the Colorado Sex Offender Management Board (the "Board").  To satisfy this requirement, the plaintiff was directed by his probation officer to attend the group and individual sex offender treatment offered by Cheri Fisher of Behavioral Offender Services.  Ms. Fisher is licensed by the Board to provide the required treatment.  Id. at ¶ 23.

4.   Behavioral Offender Services provides group and individual treatment to rehabilitate convicted sex offenders pursuant to the Standards and Guidelines promulgated by the Board.  Id. Cheri Fisher provides all of the treatment and services offered by Behavioral Offender Services. Id. at ¶ 10.

5.   Prior to starting his probationary sentence, the plaintiff was required to sign and initial terms and conditions. One of the standard terms and conditions states:

> You shall attend and actively participate in a sex offender evaluation and treatment program approved by the probation officer. You will abide by the rules of the treatment program, and the treatment contract and will successfully complete the program to the satisfaction of the probation officer and the treatment provider.

Id. at ¶ 24.

6. Another pertinent condition of the plaintiff's probation states "[y]ou shall not change treatment programs without prior approval of the probation officer." Id. at ¶ 25.

7. The acoustics in the Behavioral Offender Services building result in a constant reverberation which causes background noise that destroys the plaintiff's ability to hear what is being said by the other offenders in his treatment group. The room has a high ceiling and hard floors which cause voices to echo and make it nearly impossible for the plaintiff to understand the proceedings without auxiliary aids or services beyond his hearing aids. In addition, many group members tend to mumble, slur their speech, and/or speak rapidly, adding to the plaintiff's difficulty in understanding the group therapy. The plaintiff also struggles to hear and understand Ms. Fisher. The plaintiff cannot actively participate in his treatment if he cannot hear or understand Ms. Fisher and the other members of the group. Id. at ¶¶ 27, 29, 31.

8. On several occasions, the plaintiff has raised with Ms. Fisher and his probation officer the issue of his inability to actively participate in his treatment. He has repeatedly requested that Ms. Fisher and his probation officer provide him with materials in an accessible format (written rules, assignments, and notes). On one occasion, his probation officer failed to provide him with written instructions after providing them orally. The plaintiff was not able to hear all of the instructions and was sanctioned by his probation officer for failure to follow the oral instructions. Id. at ¶ 30.

9. As a result of the defendant's refusal to accommodate his disability, the plaintiff has been forced to attempt to understand the group therapy sessions through lip-reading which is "an extremely speculative means of communication" and is "hardly sufficient" to enable the plaintiff to actively participate in his treatment. Id. at ¶ 29.

10.   The Rehabilitation Act and the Americans With Disabilities Act ("ADA") require that when the Larimer County Probation Department provides its services to individuals who are deaf, it must ensure that the individual is provided with appropriate "auxiliary aids and services" to allow effective communication and an equal opportunity to participate in Larimer County's public services and programs.  Id. at ¶ 17.

Claims Three and Four of the plaintiff's Complaint are brought against the Probation Department.  Claim Three alleges that the Probation Department violated Title II of the ADA.  Claim Four alleges that the Probation Department discriminated against the plaintiff in violation of Section 504 of the Rehabilitation Act.

### III.   ANALYSIS

### A.   Claim Three - ADA

The Probation Department asserts that the plaintiff's ADA Claim for damages is barred by the Eleventh Amendment.[1]  Motion, p. 7.

The Eleventh Amendment bars actions for damages against a state in federal court.  Kentucky v. Graham, 473 U.S. 159, 169 (1985).  "[A]n assertion of Eleventh Amendment immunity concerns the subject matter jurisdiction of the district court."  Ruiz v. McDonnell, 299 F.3d 1173, 1180 (10th Cir. 2002).  Eleventh Amendment immunity extends "to states and state entities but not to counties, municipalities, or other local government entities."  Steadfast Ins. Co. v. Agric. Ins. Co., 507 F.3d 1250, 1253 (10th Cir. 2007).  Whether a particular entity is entitled to Eleventh Amendment immunity depends on whether it is "an arm of the state."  Id.

---

[1]The plaintiff has withdrawn his request for injunctive relief [Doc. #59].

The plaintiff concedes that the Probation Department is an arm of the state.  *Plaintiff's Response to Defendant Larimer County Probation Department's Renewed Motion to Dismiss Plaintiff's Complaint* [Doc. #55], p.1.  The plaintiff argues that Congress has abrogated the states' Eleventh Amendment immunity for his Title II ADA claims.  Id. at p. 2.

Congress may abrogate a State's Eleventh Amendment immunity "if it makes its intention to abrogate unmistakably clear in the language of the statute and acts pursuant to a valid exercise of its power under § 5 of the Fourteenth Amendment."  Nevada Dept. of Human Resources v. Hibbs, 528 U.S. 721, 726 (2003).  The Tenth Circuit Court of Appeals has stated:

> As it bears on the issues in this case, the Fourteenth Amendment provides:
>
> "Section 1.... No State shall ... deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.
>
> * * *
>
> "Section 5. The Congress shall have power to enforce, by appropriate legislation, the provisions of this article."
>
> U.S. Const. amend. XIV.  The enforcement prerogative granted by § 5 gives Congress broad authority, such that it may enact "prophylactic legislation that proscribes facially constitutional conduct, in order to prevent and deter unconstitutional conduct," so long as these measures do not work a substantive change in the governing law.  Hibbs, 538 U.S. at 727–28, 123 S.Ct. 1972.  The ADA is one such piece of prophylactic legislation.

Guttman v. Khalsa, 669 F.3d 1101, 1111-12 (10th Cir. 2012).

Congress abrogated the states' Eleventh Amendment immunity by specifically providing in the ADA that "[a] State shall not be immune under the eleventh amendment to the Constitution of the United States from an action in Federal or State court of competent jurisdiction for a violation of this chapter."  42 U.S.C. § 12202.  However, the Supreme Court

subsequently invalidated Congress' abrogation of the states' immunity to claims under Title I of

the ADA.  Board of Trustees of the Univ. of Alabama v. Garrett, 531 U.S. 356, 374 (2001).

Several years later, the Court addressed the abrogation of the states' immunity under Title II of

the ADA.  The Court held that Title II validly abrogates state immunity as to cases involving the

right of disabled persons to access state courts.  Tennessee v. Lane, 541 U.S. 509, 533–534

(2004).  The Court later held that"insofar as Title II creates a private cause of action for damages

against the States for conduct that *actually* violates the Fourteenth Amendment, Title II validly

abrogates state sovereign immunity."  United States v. Georgia, 546 U.S. 151, 159 (2006)

(emphasis in original).

To determine whether the accommodation requirement of Title II is a valid exercise of

the § 5 authority as it applies to this case, the court must determine on a claim-by-claim basis

"(1) which aspects of the State's alleged conduct violated Title II; (2) to what extent such

misconduct also violated the Fourteenth Amendment; and (3) insofar as such misconduct

violated Title II but did not violate the Fourteenth Amendment, whether Congress's purported

abrogation of sovereign immunity as to that class of conduct is nevertheless valid."  Guttman,

669 F.3d at 1113.[2]

The plaintiff claims that the Probation Department violated Title II of the ADA when it

failed to make reasonable modifications to its policies, procedures, and/or practices that would

enable him to actively participate in his group and individual sex offender treatment.  *Complaint*,

pp. 17-20.  Title II of the ADA provides that "no qualified individual with a disability shall, by

reason of such disability, be excluded from participation in or be denied the benefits of the

---

[2]The plaintiff does not acknowledge or discuss these factors.

services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."[3]  42 U.S.C. § 12132.  A public entity includes state and local governments and their agencies and instrumentalities.  42 U.S.C. § 12131(1).  The ADA defines a "qualified individual with a disability" as "an individual with a disability who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

The Complaint does not contain any constitutional claims.  In his response brief, the plaintiff claims that the Probation Department's failure provide him with reasonable accommodations constituted a violation of his fundamental right to access the courts.  The plaintiff states that <u>Tennessee v. Lane</u>, 541 U.S. 509 (2004) "is applicable and controlling here." *Plaintiff's Response to Defendant Larimer County Probation Department's Renewed Motion to Dismiss* [Doc. #55] (the "Response"), p. 3.  In <u>Lane</u>, two paraplegic plaintiffs alleged that they could not take advantage of the courts because they did not have physical access to the buildings. The Court found that Title II of the ADA is a valid § 5 legislation insofar as it applies to the fundamental right of access to the courts.  The Court identified the following basic constitutional guarantees which Title II seeks to enforce: the right of a criminal defendant to be present at all stages of the trial; the right to a meaningful opportunity to be heard in judicial proceedings; the

---

[3]Title II authorizes private citizens to bring actions for money damages against public entities that violate section 12132.  42 U.S.C. § 1213 (incorporating by reference the remedies, procedures, and rights set forth in section 505 of the Rehabilitation Act of 1973 (29 U.S.C. 794a)).

right to trial by a jury composed of a fair cross section of the community; and the right of access to criminal proceedings.

The plaintiff's reliance on <u>Lane</u> is misplaced.  <u>Lane</u> addresses the fundamental right to access the courts, not a fundamental right to meaningfully participate in sex offender treatment. Neither the Complaint nor the plaintiff's Response allege facts that implicate the fundamental right to access the courts.  Therefore, the plaintiff's right to access the courts cannot form the basis of the defendant's waiver of immunity.

The plaintiff also claims that the Probation Department's failure provide him with reasonable accommodations constituted a violation of his due process rights.  *Response*, pp. 6-8. The Due Process Clause of the Fourteenth Amendment guarantees due process when a person may be deprived of life, liberty, or property.  U.S. Const. amend. XIV, § 1.  The deprivation of a liberty interest can occur procedurally or substantively.  <u>County of Sacramento v. Lewis</u>, 523 U.S. 833, 845-46 (1998) (stating that "[t]he touchstone of due process is protection of the individual against arbitrary action of government whether the fault lies in a denial of fundamental procedural fairness or in the exercise of power without any reasonable justification in the service of a legitimate governmental objective") (internal quotations and citations omitted).

The plaintiff alleges that he is subject "to arbitrary and capricious actions by his probation officer and the court itself, who can and will revoke Plaintiff's probation at the first suggestion of any noncompliance, regardless of whether that noncompliance is entirely attributable to Plaintiff's inability to hear, understand and/or participate in the proceedings with his probation officer or in the therapy sessions mandated by his probation officer." *Response*, p.

7.  Those allegations do not state a claim for deprivation of due process rights; at most, they

allege only the possibility of a deprivation.  The mere possibility of a due process violation not

sufficient to allege a claim for violation of due process rights which would abrogate the

Probation Department's sovereign immunity.

Finally, the plaintiff argues that the Probation Department's behavior violated his rights

under the Equal Protection Clause.  *Response*, pp. 6-8.  He states that his hearing impairment,

without the provision of a reasonable accommodation, "renders it difficult if not impossible for

him to hear or understand what demands are being made of him by his probation officer or to

understand what is being said in the sex offender therapy" that his probation officer required him

to attend.  He further states that he is not receiving the same quality of services from the

Probation Department as other non-disabled probationers.  Id. at pp. 6-7.

The Equal Protection Clause of the Fourteenth Amendment states that no State shall

"deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend.

XIV, § 1.  The Equal Protection Clause essentially directs that all similarly situated persons

should be treated alike.  City of Cleburne, Tex. v. Cleburne Living Ctr., 473 U.S. 432, 439

(1985).  Certain classifications, such as race and national origin, are subject to strict scrutiny and

will be sustained only if they are suitably tailored to serve a compelling state interest.  However,

the Fourteenth Amendment does not require states to make special accommodations for the

disabled if their actions towards such individuals are rational--that is, "if there is a rational

relationship between the disparity of treatment and some legitimate governmental purpose."  Bd.

of Trustees of Univ. of Alabama v. Garrett, 531 U.S. 356, 366-67 (2001); Heller v. Doe by Doe,

509 U.S. 312, 320.  The government's actions "must be upheld against [an] equal protection

10

challenge if there is any reasonably conceivable state of facts that could provide a rational basis" for its actions.  Heller, 509 U.S. at 320 (internal quotations and citations omitted).

Here, the plaintiff alleges that he raised with his probation officer the issue of his inability to actively participate in his treatment.  *Complaint*, ¶ 30.  He further states that he "must request permission from his probation officer to change treatment providers; requests which LCPD denies as a matter of course and policy, and requests of which have previously been similarly denied in Plaintiff's case."  *Response*, p. 7, n. 1.  The plaintiff does not allege any specific facts regarding when he informed his probation officer of his inability to actively participate in the treatment at Behavioral Offender Services or when he requested from his probation officer a change in treatment providers.

The Probation Department provides evidence demonstrating that the plaintiff's probation officer changed his treatment provider in September 2012.[4]  *Reply in Support of Renewed Motion to Dismiss Plaintiff's Complaint* [Doc. #61] (the "Reply"), p. 3 and attachments to Reply.  The plaintiff admits that his treatment provider was changed since filing this lawsuit.  *Plaintiff's Motion to Withdraw Claim for Injunctive Relief and for Defendant LCPD to be Permitted Extension of Time to File Reply to Plaintiff's Response as Modified* [Doc. #59], ¶ 5a.

It is easy to find reasonably conceivable facts that could provide a rational basis for the Probation Department's delay in switching the plaintiff's treatment providers.  There may have been no other readily available and qualified providers at the time the plaintiff's issues became known to the Probation Department.  Indeed, there may have been no significant delay at all

---

[4]Because the parties present a factual challenge to subject matter jurisdiction, I have wide discretion to allow affidavits and other documents to resolve disputed jurisdictional facts under Rule 12(b)(1).  Holt, 46 F.3d at 1003.

between the date the plaintiff made his situation known to the probation officer and the date his treatment provider was switched.  The plaintiff's vague allegations are insufficient to rise to the level of an Equal Protection Clause violation.

Because the plaintiff has not alleged a violation of the Fourteenth Amendment, I must determine "whether Congress's purported abrogation of sovereign immunity as to that class of conduct is nevertheless valid."  Guttman, 669 F.3d at 1113.  In doing so, I consider "(1) the nature of the constitutional right at issue; (2) the extent to which Congress's remedial statute was passed in response to a documented history of relevant constitutional violations; and (3) whether the congressional statute is "congruent and proportional" to the specific class of violations at issue, given the nature of the relevant constitutional right and the identified history of violations."  Id. at 1117 (citing City of Boerne v. Flores, 521 U.S. 507, 529-36 (1997)).[5]

The constitutional issue here is a disabled individual's right to actively participate in treatment that is a requirement of his probation.  However, as discussed above, the right as asserted against the Probation Department is more correctly described as a right to a more immediate reaction after notification of an inability to actively participate in a treatment program.  Although Title II prevents a public entity from denying a disabled individual the benefits of a program, it does not dictate the timeliness of an entity's reaction to an individual's request.  Nor is there any evidence to show that Congress identified a history of disability discrimination in the provision of probationary services.  42 U.S.C. § 12101; S.Rep. No. 101–116 (1989); H.R.Rep. No. 101–485 pts. 1, 2, 3 & 4 (1990), reprinted in 1990 U.S.C.C.A.N.

_____

[5]The plaintiff does not acknowledge or discuss these factors.

267; H.R. Conf. Rep. 101–558 (1990); H.R. Conf. Rep. No. 101–596 (1990), reprinted in 1990

U.S.C.C.A.N. 565.

Given the alleged constitutional right at issue--a right that "does not implicate a

traditional category of fundamental rights" and presents "very little evidence of a wide-spread

pattern of irrational state discrimination"--"Title II is so out of proportion to a supposed remedial

or preventive object that it cannot be understood as responsive to, or designed to prevent,

unconstitutional behavior."  Guttman, 669 F.3d at 1123-1125 (internal quotations and citations

omitted).  All three of the factors identified in City of Boerne and Guttman require a finding that

Title II does not validly abrogate the Probation Department's sovereign immunity in the context

at issue in this case.  The Motion should be granted insofar as it seeks dismissal of the ADA

claim (Claim Three).

**B.  Claim Four - Rehabilitation Act**

Claim Four alleges that the Probation Department violated section 504 of the

Rehabilitation Act, 29 U.S.C. § 794.  Section 504 provides:

> No otherwise qualified individual with a disability . . . shall, solely
> by reason of her or his disability, be excluded from the
> participation in, be denied the benefits of, or be subjected to
> discrimination under any program or activity receiving Federal
> financial assistance . . . .

29 U.S.C. § 794(a).

"To state a claim under Section 504, a plaintiff must prove (1) that he is a handicapped

individual under the Act, (2) that he is otherwise qualified for the benefit sought, (3) that he was

discriminated against solely by reason of his handicap, and (4) that the program or activity in

question receives federal financial assistance." Cohon ex rel. Bass v. New Mexico Dept. of health, 646 F.3d 717, 724 (10th Cir. 2011).

The Probation Department argues that the plaintiff has not established that he is handicapped under the Rehabilitation Act. *Motion*, p. 18.[6]  An individual is handicapped under the Rehabilitation Act if he or she "(i) has a physical or mental impairment which substantially limits one or more major life activities, (ii) has a record of such an impairment, or (iii) is regarded as having such an impairment." 34 C.F.R. § 104.3(j)(1).

The regulations governing the Rehabilitation Act provide the following definitions:

> (i) Physical or mental impairment means (A) any physiological disorder or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological; musculoskeletal; special sense organs; respiratory, including speech organs; cardiovascular; reproductive, digestive, genito-urinary; hemic and lymphatic; skin; and endocrine; or (B) any mental or psychological disorder, such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities.

> (ii) Major life activities means functions such as caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working.

> (iii) Has a record of such an impairment means has a history of, or has been misclassified as having, a mental or physical impairment that substantially limits one or more major life activities.

> (iv) Is regarded as having an impairment means (A) has a physical or mental impairment that does not substantially limit major life activities but that is treated by a recipient as constituting such a limitation; (B) has a physical or mental impairment that

---

[6]The Probation Department refers the court its arguments to dismiss the plaintiff's ADA claim in support of its request to dismiss the Rehabilitation Act claim. *Motion*, p. 21.  Analysis of a claim under Title II of the ADA is identical to analysis of a claim under section 504 of the Rehabilitation Act.  Nielsen v. Moroni Feed Co., 162 F.3d 604, 608 n. 7 (10th Cir. 1998).

> substantially limits major life activities only as a result of the
> attitudes of others toward such impairment; or (C) has none of the
> impairments defined in paragraph (j)(2)(i) of this section but is
> treated by a recipient as having such an impairment.

34 C.F.R. § 104.3(j)(2)(i)-(iv).

The plaintiff alleges that he suffers from a hearing impairment.  Attached to his

Complaint are medical records which establish that as of August 13, 2012, he has had "a long

history of sensorineural hearing loss bilaterally," he "has been a long-time user of amplification

bilaterally," and that "listening in back ground noise and in reverberant environments remains

particularly difficult . . . ."  Thus, the plaintiff's hearing impairment is sufficient to establish that

he has a "record of . . . impairment" within the meaning of the Rehabilitation Act.

The Probation Department also argues that they did not discriminate against the plaintiff

because of his handicap.  *Motion*, pp. 20-21.

The plaintiff alleges that in 2005, he "was directed by his probation officer to begin

attending and participating in the group and individual compulsory sex offender treatment

offered by Defendant Cheri Fisher at Behavioral Offender Services."  *Complaint*, ¶ 23.  He was

required to agree to terms and conditions of his probation, including a requirement that he attend

a sex offender treatment program approved by his probation officer and that he not change

treatment programs without the prior approval of his probation officer.  Id. at ¶¶ 24-25.  He was

unable to actively participate in his treatment due to the sound dynamics in the treatment room.

Id. at ¶ 29.  He "raised this issue" with his probation officer and his treatment provider "on

several occasions" and "requested on multiple occasions" that his treatment provider and his

probation officer provide him with materials in an accessible format (e.g., written rules,

assignments and notes).

The plaintiff filed his Complaint on September 14, 2012.  Attached to the Complaint are medical records from April 2006 and August 2012 which show that the plaintiff has a hearing impairment; a letter from a doctor dated January 2012 stating that he has "a history of coronary artery disease, congestive heart disease, deafness, and insulin dependent Type 2 diabetes" and that he should be "considered totally and permanently disabled as a result of his medical conditions"; an undated  DOJ Civil Rights Complaint against Cheri Fisher; a letter from plaintiff's counsel to Cheri Fisher requesting an accommodation of Computer Aided Real-Time Transcription during his group and individual therapy sessions; and a response letter from Cheri Fisher to plaintiff's counsel which requests documentation of the plaintiff's disability and a recommendation from a qualified professional regarding the best reasonable accommodation that she and the State are obligated to provide.[7]

A complaint must contain specific allegations sufficient to establish that it plausibly supports a claim for relief.  Alvarado v. KOB-TV, L.L.C., 493 F.3d 1210, 1215 n.2 (10th Cir. 2007).[8]  "The burden is on the plaintiff to frame a complaint with enough factual matter (taken as true) to suggest that he or she is entitled to relief."  Robbins v. Oklahoma, 519 F.3d 1242, 1247 (10th Cir. 2008) (internal quotations and citation omitted).

---

[7]Written documents attached to a complaint are exhibits and are considered part of the complaint for consideration in a Rule 12(b)(6) dismissal.  Hall v. Bellmon, 935 F.2d 1106, 1112 (10th Cir. 1991).

[8]The plaintiff argues that a complaint "should not be dismissed for failure to state a claim unless it appears beyond doubt that [plaintiff] can prove no set of facts in support of his claim that would entitle him to relief."  Response, p. 10.  However, the Supreme Court has held that in order to withstand a motion to dismiss under rule 12(b)(6), Fed.R.Civ.P., a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The allegations of the complaint must be sufficient to "nudge[] the[] claims across the line from conceivable to plausible."  Id.

16

Our circuit court has stated:

> [P]lausibility . . . refer[s] to the scope of the allegations in a
> complaint: if they are so general that they encompass a wide swath
> of conduct, much of it innocent, then the plaintiffs have not nudged
> their claims across the line from conceivable to plausible.  The
> allegations must be enough that, if assumed to be true, the plaintiff
> plausibly (not just speculatively) has a claim for relief.

Id. at 1247 (internal quotations and citations omitted except as noted).

To state a claim in federal court, a complaint must explain what each defendant did to the plaintiff; when the defendant did it; how the defendant's action harmed the plaintiff; and what specific legal right the plaintiff believes the defendant violated.  Nasious v. Two Unknown B.I.C.E. Agents, 492 F.3d 1158, 1163 (10th Cir. 2007).

Here, the plaintiff does not allege when he made the Probation Department aware that he was not able to actively participate in the treatment sessions due to his hearing impairment, nor does he allege the dates on which he requested from the Probation Department materials in an accessible format.  Nor are there any allegations regarding when--or if--the Probation Department received any of the documents attached to the Complaint.  As discussed above, the Probation Department states, and the plaintiff admits, that the probation officer changed the plaintiff's  treatment provider in September 2012.

The plaintiff's sparse allegations against the Probation Department are not sufficient to state a plausible claim that the Probation Department discriminated against him because of his handicap.  The Motion should be granted insofar as it seeks dismissal of the Rehabilitation Act claim (Claim Four) for failure to state a claim upon which relief can be granted.

## IV.  CONCLUSION

I respectfully RECOMMEND that the Renewed Motion to Dismiss Plaintiff's Complaint

[Doc. #38] be GRANTED.[9]

Dated January 9, 2014.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge

---

[9]Pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 14 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).